FILED
FEB 1 0 2015
CINDY KIRBY, COURT CLERK
LINCOLN COUNTY, OKLAHOMA

IN THE DISTRICT COURT OF LINCOLN COUNTY, OKLAHOMA
STATE OF OKLAHOMA

JENNIFER LIN COOPER, on behalf of
herself and all other residents of central
Oklahoma similarly situated,                          PLAINTIFF

vs.                                        Case No. CJ - 2015 - 24

NEW DOMINION, LLC,
SPESS OIL COMPANY, and
JOHN DOES 1-25                                        DEFENDANTS

---

## CLASS ACTION PETITION

---

Comes now the Plaintiff, Jennifer Lin Cooper ("Ms. Cooper" or "Plaintiff"), individually and on behalf of similarly situated residents of central Oklahoma, and for her Class Action Petition against New Dominion, LLC ("New Dominion"), Spess Oil Company ("Spess"), and John Does 1 – 25 (collectively "Defendants") states:

1.     This is a class action lawsuit brought by a homeowner in Lincoln County, Oklahoma whose home suffered damages because of earthquakes caused by Defendants' operations of wastewater disposal wells (also known as "injection wells").

2.     Plaintiff brings this action on her own behalf and on behalf of other similarly situated central Oklahoma citizens who own real property in the following counties of Oklahoma: Lincoln, Payne, Logan, Oklahoma, Cleveland, Pottawatomie, Seminole, Okfuskee, and Creek.

3.     Over the past several years, thousands of earthquakes have occurred within the central portions of the state, which were only recently tied to the injection well operations of the Defendants.

## PARTIES

4. Plaintiff Jennifer Lin Cooper is a citizen of Oklahoma and a resident of Lincoln County, Oklahoma.

5. Defendant New Dominion, LLC, ("New Dominion") is an Oklahoma corporation doing business in the State of Oklahoma, with its principal place of business at 3400 SE 59th St., Oklahoma City, OK 73135.

6. Defendant Spess Oil Company ("Spess") is an Oklahoma corporation and doing business in Oklahoma. Its principal place of business is located at 200 S. Broadway St., Cleveland, OK 74020.

7. John Does 1 – 25 are other Oklahoma entities that have engaged in injection well operations in central Oklahoma, who have also contributed to the earthquakes and resulting damages and injuries to the Class.

## JURISIDICTION AND VENUE

8. Jurisdiction in this Court is proper. This Court has personal jurisdiction over Defendants as they do substantial business in the State of Oklahoma, are headquartered in the State, and operate the injection wells at issue in this judicial district.

9. Venue is proper in this Court as a substantial part of the events or omissions giving rise to this claim occurred here.

## FACTUAL ALLEGATIONS

10. In recent years, thousands of earthquakes have occurred in central Oklahoma.

11. In 2014, Oklahoma had more than twice the number of earthquakes as California, making it the most seismically active state in the continental United States.

Page 2 of 13

12.   Recently, scientists have tied these earthquakes to the disposal of wastewater related to fracking operations, which the oil and gas industry uses to release trapped oil and gas.

13.   The waste fluids generated from fracking are often disposed of by injecting the polluted fluids back into the earth under extreme pressure in what are usually called wastewater disposal wells or injection wells.

14.   Scientists have determined a correlation exists between wastewater injection and earthquakes in central Oklahoma.

15.   The oil and gas industry, however, has issued public statements to hide the seismic problems they are creating, and continue a mantra that their operations do not cause earthquakes.

16.   Plaintiff Cooper lives near Prague, Oklahoma and suffered earthquake damage because of man-made earthquakes in and around the community in November of 2011.

17.   On November 5, 6, and 8, 2011, three earthquakes of 5.0, 5.7, and 5.0 magnitude occurred in and around Prague, Oklahoma.

18.   A 5.0 magnitude earthquake is substantial, and can cause substantial damage to people and property.  Such a magnitude earthquake is also rarely seen in the United States east of the Rocky Mountains.

19.   The 5.0, 5.7, and 5.0 Prague earthquakes destroyed many homes, damaged many other buildings and, further, injured people.  These earthquakes also buckled pavement on the streets and highways near and around Prague and were even felt by residents of St. Louis nearly 500 miles away.

20.   On or about November 5, 2011, and in the early morning hours, Ms. Cooper and her son were sleeping when their entire home shook. It sounded as if a helicopter was landing on their roof. They could hear glass breaking. Ms. Cooper went to her kitchen and found numerous

items in her cabinets were broken and on the floor. Nearly every picture frame had been shaken to the floor. The sheetrock was cracked and broken above almost every door. Ms. Cooper and her son realized they had just experienced an earthquake.

21.    The following day another earthquake occurred and further damaged Ms. Cooper's home. On that occasion, her home sustained damages as follows:  the chimney had fallen away from the house and to the ground; the brick facing of her home was cracked in multiple places and falling to the ground as well; her floor tiles were cracked, countertops were displaced, doors were wracked, ceilings were cracked, sheetrock was broken, , concrete had cracked, windows were shaken loose, studs were cracked and broken, bathtubs had been shaken from the wall, brick columns had been moved, and electrical problems began to surface around her house.

22.    The earthquakes and aftershocks continued around Ms. Cooper's home for several days.  One quake even trapped Ms. Cooper and her son inside their home, and Ms. Cooper's father had to rescue them by ripping a door from the home.

23.    Ms. Cooper and her son were terrified. Her son could not sleep in his own room, and Ms. Cooper suffered severe anxiety.

24.    Ms. Cooper's home has suffered over $100,000 in damages and necessary repairs.

25.    Although she bought her home in 2010 for $117,000 and made about $15,000 in improvements to raise the home's value to about $132,000, she can never sell it for that amount due to the need for substantial repairs, depreciated value due to damages it sustained, and due to the fact that Defendants' operations have created, and continue to create, a market stigma on her home's market value.

26.    Representative photographs of Ms. Cooper's earthquake damaged home are:



27.    Defendants New Dominion and Spess operate wastewater injection wells in and around Lincoln County, Oklahoma, and other wastewater injection wells in central Oklahoma. These injection wells have caused and contributed to the earthquakes occurring in Oklahoma, and specifically caused the damages sustained by Plaintiff Cooper and her home.

28.    The earthquakes in and around Prague, Oklahoma in 2011 were investigated, and scientists published a March 2013 study finding a correlation between the injection wells operated by the Defendants and the earthquakes devastating Prague, Oklahoma in November of 2011. Keranen, K.M., Savage, H.M., Abers, G.A., Cochran, E.S. 2013. *Potentially induced*

Page 5 of 13

*earthquakes in Oklahoma, USA: Links between wastewater injection and the 2011 M 5.7 earthquake sequence.* GEOLOGY, Mar. 25, 2013.

29.    On July 3, 2014, the journal Science published a scientific study showing a sharp increase in central Oklahoma seismicity since 2008. The study linked the earthquakes to wastewater injection operations in central Oklahoma. Keranen, K.M., Weingarten, M., Abers, G.A., Bekins, B.A., Ge, S. 2014. *Sharp increase in central Oklahoma seismicity since 2008 induced by massive wastewater injection.* SCIENCE, July 3, 2014

30.    The U.S. Geological Survey also recently issued a statistical analysis showing the recent jumps in Oklahoma's earthquakes are not the result of natural seismic changes and wastewater injection wells are instead the most likely culprit. The survey also warned that the rise in seismic activity has raised the chance of a damaging magnitude 5.5 or greater in the state. *Record Number of Oklahoma Tremors Raises Possibility of Damaging Earthquakes.* USGS-Oklahoma Geological Survey Joint Statement on Oklahoma Earthquakes, Oct. 22, 2013; updated May 2, 2014.

31.    In spite of these scientific studies, the oil and gas industry continues to say Oklahoma has naturally occurring seismicity, that its operations are not causing the earthquakes, and that recent reports linking injection well operations to Oklahoma quakes are not based upon good science.

## CLASS ALLEGATIONS

32.    Plaintiff re-alleges and incorporates the foregoing Paragraphs, as if fully set forth, word-for-word.

33.    Certification is appropriate under 12 O.S. § 2023 for the following Class:

Page 6 of 13

All residents of Lincoln, Payne, Logan, Oklahoma, Cleveland, Pottawatomie, Seminole, Okfuskee, and Creek counties of Oklahoma owning homes and/or business properties from November 5, 2011 through the time the Class is certified, Class notice has been delivered to the Class, and Class members have had the opportunity to opt out.

Excluded from the Class are Defendants' directors, officers, employees and agents, and the judicial officer presiding over this case and his/her immediate family members, and any member of the Class that files a timely exclusion.

### Numerosity

34. In recent years, thousands of earthquakes have been triggered across Oklahoma.

35. These earthquakes are continuing across the state of Oklahoma.

36. The members of the class are so numerous and scattered throughout the counties that joinder of all members is impracticable.

### Typicality

37. The Plaintiff's claims described are typical between the members of the Class and Defendants.

38. The Defendants' wastewater injection operations have caused earthquakes, pose a significant danger, and have caused damages to Plaintiff and the Class in a similar manner.

### Commonality

39. Plaintiff's claims raise issues of fact or law, which are common to the members of the putative class. These common questions include, but are not limited to:

    (a) whether the Defendants' operations caused earthquakes in central Oklahoma;

    (b) whether Defendants' operations amount to a nuisance;

    (c) whether Defendants' operations are an ultra-hazardous activity;

Page 7 of 13

(d)   whether Defendants' operations were negligently performed;

(e)   whether Defendants' caused a trespass; and

(f)   whether Plaintiff and the Class Members have suffered damages proximately caused by Defendants' operations.

40. These issues are common among all putative class members, are superior and predominate over any issues affecting individual members of the putative class.

### *Superiority*

41.   The predicate issues relate to the Defendants' wastewater injection operations, actions and activities, and whether such activities pose a nuisance, are an ultra-hazardous activity, were negligently performed, and/or caused trespasses. The focus of this action will be on the common and uniform conduct of the Defendants in conducting their wastewater injection operations.

42.   Absent class-action relief, the putative class members would be forced to prosecute hundreds of similar claims in different venues around the state of Oklahoma. Such an event would cause tremendous amounts of waste, but the prosecution of these claims as a class action will promote judicial economy.

### *Adequacy*

43.   Plaintiff is interested in the outcome of this litigation and understands the importance of adequately representing the Class.

44.   Plaintiff will fairly and adequately protect the interests of the Class sought to be certified.

45.    Counsel for Plaintiff and the Class are experienced in class-action and complex consumer litigation and are qualified to adequately represent the Class.

## CAUSES OF ACTION

### Count I – Private Nuisance

46.    Plaintiff re-alleges and incorporates the foregoing Paragraphs as if fully set forth, word-for-word.

47.    The Defendants' conduct constitutes a private nuisance.

48.    Plaintiff and the Class have property rights and are privileged regarding the use and enjoyment of their homes, businesses, and land. Defendants' actions and operations as described above have unlawfully and unreasonably interfered with those rights and privileges.

49.    Plaintiffs and the Class have suffered harm and damages because of Defendants' creation of a nuisance, including:

(a)    Damages to  personal and real property;

(b)    Annoyance, discomfort and inconvenience occasioned by the nuisance created by the defendants on their property;

(c)    Losing peace of mind;

(d)    Personal injury;

(e)    Market loss to their real estate; and

(f)    Economic loss from business interruption.

## Count II – Absolute Liability

50.    Plaintiff re-alleges and incorporates the foregoing Paragraphs as if fully set forth, word-for-word.

51.    Defendants' actions described above are ultra-hazardous activities that involve a risk of serious harm to a person or the chattels of others that cannot be eliminated by exercising the utmost care and are not a matter of common usage.

52.    As a direct and proximate result of Defendants' ultra-hazardous activities, the Plaintiff and the Class have sustained damages, which are the direct and proximate result of Defendants' ultra-hazardous or abnormally dangerous activities, to which Defendants are strictly liable, including:

(a)    Damages to personal and real property;

(b)    Annoyance, discomfort and inconvenience occasioned by the nuisance created by the defendants on their property;

(c)    Losing peace of mind;

(d)    Personal injury;

(e)    Market loss to their real estate; and

(f)    Economic loss from business interruption.

## Count III - Negligence

53.    Plaintiff re-alleges and incorporates the foregoing Paragraphs, as if fully set forth, word-for-word.

54.    Defendants owed a duty to Plaintiff and the Class to use ordinary care and not to operate or maintain their injection wells in such a way as to cause or contribute to seismic

activity. Defendants, all of which are experienced in these operations, knew, or should have known, of the connection between injection wells and seismic activity, and acted in disregard of these facts.

55.    As a direct and proximate result of these facts, omissions, and faults of the Defendants, the Plaintiff and the Class have suffered damages and injuries reasonably foreseeable to the Defendants, including:

(a)    Damages to personal and real property;

(b)    Annoyance, discomfort and inconvenience occasioned by the nuisance created by the defendants on their property;

(c)    Losing peace of mind;

(d)    Personal injury;

(e)    Market loss to their real estate; and

(f)    Economic loss from business interruption.

### *Count IV - Trespass*

56.    Plaintiff re-alleges and incorporates the foregoing Paragraphs, as if fully set forth, word-for-word.

57.    Defendants, without the Plaintiff's and any Class Member's consent and without legal right, intentionally engaged in activities that resulted in concussions or vibrations to enter Plaintiff's and Class Members' property. Such unauthorized invasion of the Plaintiff's and Class Members' property interests by concussions or vibrations by Defendants constitutes a trespass.

58.    Because of Defendants' trespass, Plaintiff and the Class have suffered damages, including:

Page 11 of 13

(a)   Damages to personal and real property;

(b)   Annoyance, discomfort and inconvenience occasioned by the nuisance created by the defendants on their property;

(c)   Losing peace of mind;

(d)   Personal injury;

(e)   Market loss to their real estate; and

(f)   Economic loss from business interruption.

## PUNITIVE DAMAGES

59.   Defendants' actions, in knowingly causing seismic activity because of their injection well operations, constitute wanton or reckless disregard for public or private safety, and thus, subject them to a claim for punitive damages, for which Plaintiff and the Class seek an amount sufficient to punish the Defendants and to deter them and others similarly situated from such conduct in the future.

## DEMAND FOR JURY TRIAL

60.   Plaintiff and the Class respectfully demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class respectfully request the following relief:

i.    Certifying the Class as requested;

ii.   A joint and several judgment against Defendants awarding damages caused by the conduct of the Defendants in an amount to be proven at trial;

iii.  Punitive damages;

iv.   Awarding attorneys' fees, expenses, and costs;

v.   Pre-judgment and post-judgment interest; and

vi.   All other relief to which Plaintiff is entitled or that the Court deems just and proper.

Date: February _10_, 2015

Respectfully Submitted,

Larry K. Lenora, OBA # 5372
larrylenora@sbcglobal.net
Gregory A. Upton, OBA # 17156
greguptonlaw@sbcglobal.net
LENORA & UPTON
P.O. Box 337
116 West 8th Street
Chandler, OK 74834
Tel: (405) 258-1334
Fax: (405) 258-0249

Scott E. Poynter
scott@emersonpoynter.com
William T. Crowder
wcrowder@emersonpoynter.com
Corey D. McGaha
cmcgaha@emersonpoynter.com
EMERSON POYNTER LLP
The Rozelle-Murphy House
1301 Scott Street
Little Rock, AR 72202
Tel: (501) 907-2555
Fax: (501) 907-2556

John G. Emerson
jemerson@emersonpoynter.com
EMERSON POYNTER LLP
830 Apollo Lane
Houston, TX 77058
Tel: (281) 488-8854
Fax: (281) 488-8867

Attorneys for Plaintiff and the Class